**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
MARK A. BEILBY SR., as Administrator for
the Estate of Mark A. Beilby, Jr.,

              Plaintiff,                      COMPLAINT
                                                    6:23-cv-328 (TJM/TWD)
vs.

JEFFREY MILLER, STATE OF NEW YORK,

              Defendants.

----------------------------------------------------------x

      This is a wrongful death action brought to vindicate the civil rights of the decedent who was shot to death by defendant, then a member of the New York State Police.

**PARTIES**

      1. Plaintiff, Mark A. Beilby, Sr., is the father of the decedent and the duly appointed administrator of his Estate.

      2. Defendant Jeffrey Miller is a member of the New York State Police and committed the acts in question within this judicial district and under the color of state law.

      3. Defendant State of New York is Mr. Miller's employer and, through respondeat superior, responsible for his actions.

**JURISDICTION**

      4. As plaintiff alleges that defendant Miller violated rights guaranteed to the decedent by the United States Constitution, this question presents a

1

federal question, and this Court has jurisdiction pursuant to 42 U.S.C. sections 1983 and 1988 and 28 U.S.C. secs 1331 and 1343 (1)(c) & (d).

5. Plaintiff timely filed a notice of claim against the defendant New York State which has failed to adjust the claim.

6. Plaintiff's pendent claims arise from the same sequence of facts as does his federal claim and this court has jurisdiction over them pursuant to 28 U.S.C. section 1367.

**STATEMENT OF FACTS**

7. The decedent was a disabled person with the meaning of federal and state law and the defendant knew of his mental disabilities, generally diagnosed as bi-polar disorder.

8. On prior occasions, defendant and other members of the same barracks had responded to calls by decedent's mother as decedent was behaving in an aberrant manner.

9. On December 22, 2021, decedent was visiting his mother at her home in Unadilla, New York, County of Otsego.

10. Decedent became upset, apparently provoked by the presence of his mother's boyfriend.

11. Decedent and his mother and her boyfriend squabbled, both verbally and physically and when the decedent started engaging in self-injurious behavior, she called 911.

12. Defendant Miller responded to the residence.

13. At the time he responded, decedent's mother was outside with her boyfriend and decedent was locked in the residence.

14. Ms. LeBlanc, decedent's mother, provided defendant Miller with the key to the apartment in which she lived, and the decedent was then occupying.

15. Defendant Miller told Ms. LeBlanc that he would wait for back-up, but rather than doing so, he used the key and gained access to the residence.

16. At the time he entered the residence, the decedent was standing about 20-25 feet from the doorway.

17. At all relevant times until he was shot and killed, the decedent remained in the same location, some 20-25 feet from the doorway.

18. When defendant Miller first saw him, the decedent was holding a knife.

19. Defendant Miller directed the decedent to drop the knife.

20. The decedent complied and dropped the knife.

21. After the decedent dropped the knife and was without any weapon, defendant Miller shot and killed Mark Beilby Jr. from a distance of 20-25 feet.

22. Four bullets discharged by defendant Miller penetrated decedent's Body as follows: into the right lower chest, the midline epigastric region, the upper quadrant of decedent's abdomen and the left hand.

23. At no time did decedent pose any imminent threat to defendant Miller or anyone else.

24. At no time did the decedent charge with his knife toward defendant Miller or make any verbal threat.

25. At no time did defendant Miller use any less than lethal force toward the decedent.

26. Before being shot to death, the decedent complied with the direction issued by defendant Miller to drop the knife he had been holding.

27. Decedent had no prior known history of violence toward any police officer.

28. At the time he was shot to death, no civilian was in the apartment and decedent posed no threat to any civilian.

29. While defendant Miller told decedent's mother that he intended to wait the arrival of back-up before entering her apartment, in fact, he did not await back-up and told Mr. Craft, Ms. LeBlanc's boyfriend, that he had come to take care of the issue.

30. The decedent suffered apprehension, fright, and fear as a consequence of the use of excessive force by defendant.

31. By and through defendant Miller's wrongful action, plaintiff has been deprived of the support and companionship of his son.

32. Defendant Miller's use of lethal force was far disproportionate to any threat to anyone which the decedent might have posed when defendant shot and killed him.

### AS AND FOR A FIRST CAUSE OF ACTION
### NEGLIGENCE
### ON BEHALF OF ESTATE OF MARK A. BEILBY – SURVIVAL CLAIM
### (Against BOTH defendants)

33. Plaintiff hereby realleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "32" above.

34. In light of the nature of the risk posed by the decedent, defendant's use of force was unnecessary and his discharge of multiple bullets negligent, that is, beneath the standard of care and practice expected of a reasonably trained police officer under the totality of these circumstances.

35. As defendant Miller was acting as an agent of the defendant State of New York and within the scope of his employment when he fired the shots that killed decedent, defendant State bears legal responsibility for their actions under the doctrine of *respondeat superior*.

36. As a result of being shot by defendant State's agents, decedent suffered substantial conscious pain and suffering, including fear of imminent death and defendants should be held jointly and severally liable for said compensatory damages.

37. Defendants Miller's shooting and killing of decedent without any provocation justifies, indeed requires, the award of punitive damages, as a means

to punish him, to deter like acts and to serve as a beacon to those who would use excessive force without sufficient cause.

### AS AND FOR A SECOND CAUSE OF ACTION
### NEGLIGENCE
### ON BEHALF OF ESTATE OF MARK BEILBY JR. – WRONGFUL DEATH
### (Against BOTH Defendants)

38. Plaintiff hereby realleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "37" above.

39. Defendant Miller's negligent discharge of his firearm killed decedent, thereby causing pecuniary damages to his distributees, including, without limitation, loss of support and services, as well as funeral and burial expenses.

40. As defendant Miller was acting as an agent of the defendant State of New York and acting within the scope of his employment when he fired these shots and killed decedent, defendant State bears legal responsibility for his actions under the doctrine of *respondeat superior*.

41. As defendant Miller's shooting and killing decedent was a wanton and brutal act which justifies, indeed requires, the award of punitive damages, as a means to punish these defendants to deter like acts and to serve as a beacon to those who would use such excessive force.

### AS AND FOR A THIRD CAUSE OF ACTION
### BATTERY
### ON BEHALF OF ESTATE OF MARK BEILBY, JR – SURVIVAL CLAIM
### (Against both Defendants)

42. Plaintiff hereby realleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "41" above.

43. Defendant Miller intentionally discharged his firearm multiple times, striking decedent's torso, thereby killing him.

44. In doing so, defendant police officer lacked any lawful justification.

45. As defendant officer was then acting as an agent of the State of New York and within the scope of his employment when he fired these shots and killed decedent, it bears legal responsibility for his actions under the doctrine of *respondeat superior*.

46. As a result of being shot numerous times by defendant Miller, decedent suffered substantial conscious pain and suffering, including fear of imminent death.

47. Defendant's shooting and killing decedent was a wanton and brutal act which justifies, indeed requires, the award of punitive damages, as a means to punish them, deter like acts and serve as a beacon to those who would use excessive force.

### AS AND FOR A FOURTH CAUSE OF ACTION
### BATTERY
### ON BEHALF OF ESTATE OF MARK BEILBY JR. – WRONGFUL DEATH
### (Against BOTH Defendants)

48. Plaintiff hereby realleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "47" above.

49. Defendant Miller intentionally discharged their firearms on multiple occasions, striking decedent and killing him.

50. In doing so, defendant lacked any lawful justification.

51. Defendant's intentional discharge of his firearm killed decedent, thereby causing pecuniary damages to his distributees, including, without limitation, loss of support and services, as well as funeral and burial expenses.

52. As defendant was acting as an agent of the defendant State and within the scope of his employment when firing these shots and killing decedent, it bears legal responsibility for their actions under the doctrine of *respondeat superior.*

53. Defendant's shooting and killing of decedent was a wanton and brutal act which justifies, indeed requires, the award of punitive damages, as a means to punish defendants, to deter like acts and to serve as a beacon to those who would use excessive force.

### AS AND FOR A FIFTH CAUSE OF ACTION
### 42 U.S.C. § 1983 – EXCESSIVE FORCE
### ON BEHALF OF ESTATE OF MARK BEILBY JR.
### (Against BOTH Defendants)

54. Plaintiff hereby realleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "53" above.

55. Defendant MILLER acted in a constitutionally reckless manner when he shot and killed the decedent; his use of lethal force was not objectively reasonable as neither he nor any third party was at imminent risk of serious injury or death by and through the actions of decedent.

56. By the use of such unreasonable force, defendant violated the decedent's right to be free of lethal force as guaranteed by the Fourth Amendment to the United states Constitution as made actionable against him by and through 42 U.S.C. section 1983.

57. Defendant Miller's brazen actions – shooting a civilian who had dropped a knife and was standing some 20-25 feet away from him and did not pose an imminent threat to anyone – is indicative of the defendant State of New York's constitutionally defective training of its officers.

58. As a result of defendant's unjustified use of lethal force and defendant State's deliberately indifferent training of its officers with respect to responses to such situations, decedent was unlawfully seized in violation of the Fourth Amendment to the U.S. Constitution, deprived of his life and liberty and caused to suffer substantial pain and suffering.

59. Defendant Miller's shooting and killing decedent was a wanton and brutal act which justifies, indeed requires, the award of punitive damages, as a means to punish them, to deter like acts and to serve as a beacon to those who would use excessive force.

**WHEREFORE** plaintiff prays that this Honorable Court accept jurisdiction over this matter, empanel a jury to truly and justly try this matter, award to plaintiff compensatory damages against both defendants, award punitive damages against defendant Miller, award plaintiff the costs, disbursements and attorneys' fees arising from prosecution of the action and enter any other relief the interests of justice and equity require.

Dated:  March 13, 2023

Respectfully submitted,

Michael H. Sussman [103324]

SUSSMAN & GOLDMAN
Po BOX 1005
Goshen, NY 10924
(845)-294-3991
Counsel for Plaintiff